UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEADWAY INVESTMENT PARTNERS II,
L.P., BLUE ORION LIMITED, and GREAT
SPIRIT VENTURES, LLC,

       Plaintiffs,

v.

A.M. TODD GROUP, INC. and HENRY W.
TODD,

       Defendants.
_____/

Case No. 1:09-cv-721

HON. JANET T. NEFF

## OPINION

Pending before the Court in this diversity action is plaintiffs' Motion for Partial Summary Judgment pursuant to FED. R. CIV. P. 56 (Dkt 24). For the following reasons, the Court concludes that plaintiffs' motion is properly granted.

### I. BACKGROUND

These three parties – Headway Investment Partners, Blue Orion Limited, and AM Todd Group – are the sole members of "Great Spirit Ventures, LLC," a limited liability company organized in Delaware in 2004 for the purpose of acquiring and disposing of investments in securities (Pls. Mot. ¶ 1, Dkt 24; Dfs. Resp. ¶ 1, Dkt 26). Pursuant to the terms of the Amended and Restated Limited Liability Agreement of Great Spirit Ventures, LLC ("the LLC Agreement"), each party as a member of the Limited Liability Company is "obligated to make capital contributions to

the Company ... when, as and if called by the Manager" (Pls. Mot. Br. Ex. B [LLC Agreement § 6.1, p.12], Dkt 25).

In the fall of 2008, the parties entered into two amendments to the LLC Agreement relevant to resolution of this case: the "First Amendment" and the "Third Amendment," wherein plaintiffs agreed to pay defendant AM Todd's continuing capital contribution obligations to the Company through June 30, 2009 as temporary loans – "drawdown loans" – to AM Todd, and AM Todd agreed to repay plaintiffs 125 percent of the drawdown loans by July 1, 2009 (Pls. Mot. Br. Exs. C [Am. No. 1 § 1(e), p. 2], D [Am. No. 3 § 1(e), p. 1], and E [Vinarnic Decl. ¶¶ 8-9], Dkt 25).

It is undisputed that plaintiffs advanced to the Company as drawdown loans to defendant AM Todd a total of $671,079.30, pursuant to capital calls issued on behalf of the company by its manager through June 30, 2009 (Pls. Statement of Material Facts [SMF] ¶ 4, Dkt 24; Dfs. Resp. to Pls. SMF, ¶ 4, Dkt 26).[1] It is also undisputed that AM Todd failed to repay the drawdown loans to plaintiffs in accordance with the terms of the parties' agreements by July 1, 2009, and that AM Todd has continued to fail to repay plaintiffs the amounts to date (Pls. SMF ¶ 6, Dkt 24; Dfs. Resp. to Pls. SMF, ¶ 6, Dkt 26). Specifically, plaintiffs allege that AM Todd has failed to repay plaintiffs $838,849.12 that was due by July 1, 2009 (Pls. SMF ¶ 8, Dkt 24). Defendants opine that AM Todd "strongly desires" to repay the drawdown loans and make all properly called capital contributions to Great Spirit Ventures, LLC, but AM Todd's bank has prohibited it from doing so (Dfs. Resp. ¶ 4, Dkt 26; Decl. of Henry W. Todd, Sr., ¶ 6, Dkt 27).

---

[1]In support of their factual statement, plaintiffs reference paragraphs 9 and 10 of Pascal Vinarnic's Declaration (Dkt 25, Pls. Mot. Br., Ex. E); however, these paragraphs are missing from the copy filed with the Court. In any event, defendants do not dispute plaintiffs' factual statement.

On August 6, 2009, plaintiffs filed this diversity action, alleging one claim against defendant AM Todd for breach of contract on the overdue drawdown loans (Dkt 1). Plaintiffs amended their complaint on August 10, 2009 (Dkt 4), apparently only to correct the place of incorporation for plaintiff Blue Orion Limited that was alleged in the pleading. Plaintiffs have also since filed a Second Amended Complaint (Dkts 29-30), adding Henry W. Todd, Chairman of AM Todd Group, as a defendant and adding claims for Fraudulent Inducement (Count II), Misrepresentation/Fraud (Count III), Rescission (Count IV), a violation of § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 (Count V), a violation of § 20(a) of the Securities Exchange Act of 1934 (Count VI), a violation of the Michigan Uniform Securities Act (Count VII), Promissory Estoppel (Count VIII), and Indemnification (Count IX).

On September 22, 2009, plaintiffs filed a request for a Pre-Motion Conference, seeking to file a motion for summary judgment on the breach of contract claim, now presented in Count I of the Second Amended Complaint, based on their assertion that there are no genuine issues of material fact regarding AM Todd's liability for the amounts due (Dkt 9). Following a Pre-Motion Conference on November 23, 2009, the Court issued a briefing schedule, permitting plaintiffs to file their proposed dispositive motion. On March 12, 2010, following an unsuccessful attempt to mediate their differences, the parties filed their motion papers (Dkts 24-28). Having fully considered the written briefs and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d).

## II. ANALYSIS

### A. Motion Standard

A motion for summary judgment is properly granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The party moving for summary judgment has the initial burden of showing that no issue of genuine material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of a genuine issue for trial. *Slusher*, 540 F.3d at 453.

B. Discussion

Plaintiffs argue that there should be no dispute regarding AM Todd's liability: AM Todd agreed to repay plaintiffs' drawdown loans by July 1, 2009 and has failed to do so. Accordingly, plaintiffs request the damages to which they are entitled, plus their costs of collection (including attorney fees) and interest on the amounts due and costs of collection at the "Default Rate" set forth in the LLC Agreement.

Defendants do not deny liability. Instead, defendants assert three arguments in response to plaintiffs' motion, none of which preclude this Court from granting partial summary judgment in plaintiffs' favor.

1. *Statutory Remedies*

First, arguing that this matter is controlled by Delaware law, defendants contend that the Delaware Limited Liability Company Act, DEL. CODE ANN. Title 6, § 18-101 *et seq.*, statutorily

4

limits plaintiffs' remedies to the remedies and consequences to which the parties contractually agreed (Dfs. Resp. Br., Dkt 27 at 9-10). According to defendants, the parties agreed to a liquidated damage calculation, in the form of a "Default Charge" to be assessed against a member who fails to make a payment to the Company (LLC Agreement, § 6.5.1.4, p. 14), not actual damages (Dfs. Resp. Br., Dkt 27 at 10).

Section 18-502 of the Delaware Limited Liability Company Act addresses the liability of a member of a limited liability company for contributions. DEL. CODE ANN. Title 6, § 18-502. Although defendants correctly note that § 18-502(c) authorizes members to agree to the imposition of a default charge, defendants fail to note that such a remedy is not exclusive absent the parties' express agreement to make it exclusive. Section 18-502(a) provides that "[e]xcept as provided in a limited liability company agreement, a member is obligated to a limited liability company to perform any promise to contribute cash or property or to perform services, even if the member is unable to perform, because of death, disability or any other reason. If a member does not make the required contribution of property or services, the member is obligated at the option of the limited liability company to contribute cash equal to that portion of the agreed value (as stated in the records of the limited liability company) of the contribution that has not been made. The foregoing option shall be *in addition to*, and not in lieu of, any other rights, including the right to specific performance, that the limited liability company may have against such member under the limited liability company agreement or applicable law." DEL. CODE ANN. Title 6, § 18-502 (emphasis added).

Hence, as plaintiffs point out in their reply, defendants' argument fails because defendants do not identify where the parties in this case purportedly agreed to make the Default Charge their

5

"exclusive remedy" (Pls. Reply Br., Dkt 28 at 5). Instead, the parties expressly agreed that the Default Charge was *not* an exclusive remedy. The LLC Agreement provides that "application of the aforesaid liquidated damages provisions shall *not* relieve any Defaulting Member of such Member's obligation to make all payments of its capital contributions pursuant to Drawdowns when due" (LLC Agreement, § 6.5.1.6, p. 15 [emphasis added]). Further, the Agreement provides that "[i]n the event that any Member fails to pay any portion of its Capital Commitment Amount when due, in addition to the imposition of a Default Charge, the Company shall have *all remedies available* under the Act to enforce the collection from a Defaulting Member of any unpaid capital contributions for which a Drawdown Notice has been issued, any interest owed by such Member as provided in 6.5.1.1, all costs of collection (including attorney's fees), and interest at the Default Rate on all such costs from the date paid. All such remedies shall be cumulative and shall be assessed against the applicable Defaulting Member" (*id.*, § 6.5.1.7, p. 15 [emphasis added]).

Moreover, plaintiffs accurately point out that the Default Charge provision is not the relevant provision of the LLC Agreement on these facts, where plaintiffs have not alleged that AM Todd owes repayment of the subject loans to the Company. Plaintiffs' claim is based on AM Todd's debt to plaintiffs, not the Company. The relevant provision of the parties' LLC Agreement is therefore § 6.3.4, as amended by the Third Amendment. There, the parties agreed to the terms of the drawdown loans and agreed that the imposition of the Default Charge would not be plaintiffs' exclusive remedy. Specifically, the parties agreed that "[i]n addition to the imposition of a Default Charge, the Class A Members [plaintiffs] shall have all remedies otherwise available to them to enforce the collection from the Class B Member [defendant AM Todd]" (Pls. Mot. Br. Ex. D [Am. No. 3 § 1(e), p. 2], Dkt 25).

6

In sum, because the Delaware statute upon which defendants rely does not limit plaintiffs' remedies, defendants' argument fails to demonstrate that plaintiffs are not entitled to judgment as a matter of law on their breach of contract claim.

2. *Impracticability*

Again citing Delaware law, defendants next rely on the defense of "impracticability in commercial transactions" (Dfs. Resp. Br., Dkt 27 at 11-12). Specifically, defendants assert that the worldwide financial crisis of 2008 made its performance impracticable (*id.*). Plaintiffs argue that defendants cannot establish any of the required elements of the impracticability defense, and that application of the defense on facts such as those at bar would cause "havoc in financial transactions" (Pls. Reply Br., Dkt 28 at 8-11).

The defense of impracticability requires a defendant to establish three elements: "(1) the occurrence of an event, the non-occurrence of which was a basic assumption of the contract; (2) the continued performance is not commercially practicable; and (3) the party claiming impracticability did not expressly or impliedly agree to performance in spite of impracticability that would otherwise justify non-performance." *Chase Manhattan Bank v. Iridium Africa Corp.*, 474 F. Supp. 2d 613, 620 (D. Del. 2007) (rejecting applicability of impracticability defense on facts before it). "Discharge or alteration of contractual obligations is an extraordinary remedy, however, and is not justified absent a showing of the occurrence of an event which has in fact rendered performance commercially impracticable." *Freidco of Wilmington, Delaware, Ltd. v Farmers Bank*, 529 F. Supp. 822, 825 (D. Del. 1981) (rejecting applicability of impracticability defense on facts before it).

Discharging AM Todd's contractual obligation based on commercial impracticability is not a remedy warranted on these facts, where defendants knew of the "impracticability" they now raise.

7

As noted, the provision of the parties' LLC Agreement governing the terms of the drawdown loans is § 6.3.4, as amended by the Third Amendment (Pls. Mot. Br. Ex. D [Am. No. 3 § 1(e), p. 2], Dkt 25). The parties entered into the Third Amendment on March 31, 2009, i.e., *after* the worldwide financial crisis that began in October 2008. Hence, as plaintiffs point out, the financial crisis was not a non-occurrence assumed by the parties but an event defendants anticipated when it sought other parties to help fund the Company (Pls. Reply Br., Dkt 28 at 9). The Court therefore agrees with plaintiffs that defendants cannot satisfy the elements of a commercial impracticability defense necessary to avail themselves of this extraordinary remedy.

3. *Further Discovery*

Last, defendants argue that summary judgment is premature as "significant fact issues exist with respect to the impracticability of [AM Todd] meeting its capital contribution or drawdown loan obligations" (Dfs. Resp. Br., Dkt 27 at 14). However, because defendants have failed to demonstrate that they may properly avail themselves of this remedy, their discovery argument concomitantly fails. *See, e.g., Malpiede v. Townson*, 780 A.2d 1075, 1091 (Del. 2001) (noting that a trial court need not open the "floodgates of discovery" to consider adequately the facts necessary to decide a motion for summary judgment).

### III. CONCLUSION

For the foregoing reasons, the Court determines that Plaintiffs' Motion for Partial Summary Judgment (Dkt 24) is properly granted. An Order will be entered consistent with this Opinion.

DATED: October 6, 2010           /s/ Janet T. Neff
                                           JANET T. NEFF
                                           United States District Judge